UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------ X

NORIS MELENDEZ, *on behalf of herself
and all others similarly situated*,

               Plaintiff,

         -against-

JAZEERA RESTAURANT INC. *et al*,

             Defendants.

------------------------------------------ X

**REPORT AND
RECOMMENDATION**

23-CV-05694 (LDH) (JMW)

**A P P E A R A N C E S:**

     Peter Arcadio Romero, Esq.
     **Romero Law Group PLLC**
     490 Wheeler Road
     Hauppauge, NY 11788
     *Attorneys for Plaintiff*

     *No Appearance for Defendants*

**WICKS,** Magistrate Judge:

Plaintiff, Noris Melendez,[1] commenced this action against Jazeera Restaurant Inc. and

Abdul Salam Mohammed ("Defendants") alleging that Defendants failed to pay her minimum

and overtime wages as well as her spread of hours pay, and further failed to provide accurate

wage statements and a wage notice when she was hired in violation of the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and various sections of the New York Labor Law

("NYLL"). (*See* ECF No. 13.) Plaintiff now seeks her fair wages and statutory damages, as well

as liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs. (*Id.*)

---

[1] Plaintiff brought this claim as a collective action (ECF No. 13 ¶¶ 25-29), but the case has not been certified as such, and was settled on an individual basis.

Before the Court on referral from the Hon. LaShann DeArcy Hall is Plaintiff's motion for default judgment and an assortment of damages against all Defendants. (ECF No. 21.)  For the reasons stated herein, the undersigned recommends the District Judge **GRANT** Plaintiff's motion and award damages, fees and costs as set forth below.

## FACTUAL BACKGROUND

Plaintiff, a resident of Suffolk County, New York, worked in Defendants' restaurant in Hicksville as a cook from throughout her employment from February 15, 2023 until June 6, 2023, regularly working six days per week and in excess of forty hours per week. (ECF No. 21-2 at ¶¶ 22-23.) Her duties included "washing dishes, cleaning the kitchen and bathroom" and preparing and cooking food.  (ECF No. 13 at ¶ 11.)   According to the Complaint, Plaintiff'd duties included:

> clearing dishes in the dining area, washing dishes, cleaning the kitchen and bathroom, as well as preparing and cooking food. In performing her duties, Plaintiff handled or worked with various goods including, but not limited to, cleaning solvents, mops, brooms, food products, lamb, pork, beef, poultry, fish, produce, vegetables, fruits, grains, cheese, dairy products and cookware and cooking utensils . . . .

Complaint ¶ 7 (ECF No. 1).

Individual Defendant Abdul Salam Mohammed served as the operator of Defendant Jazeera. (ECF No. 21-2 at ¶ 20.) As operator, Mohammed was active in the day-to-day management of Defendant Jazeera as he determined what wages to give Plaintiff, controlled payroll, decided her schedule, maintained employee records, and had the power to hire and fire employees including Plaintiff. (*Id.* at ¶ 21.)

The corporate defendant Jazeera, owned and operated the restaurant, which was located at 37 West John Street, Hicksville, New York. (*Id.* at ¶ 20; Complaint ¶ 8 (ECF No. 1).)[2] Jazeera allegedly had an "annual gross revenue of at least $500,000, was engaged in interstate commerce and had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, including but not limited to use of cleaning solvents, mops, brooms, food products, lamb, pork, beef, poultry, fish, produce, vegetables, fruits, grains, cheese, dairy products, cookware, utensils, receipt papers, pens, and paper, all of which undoubtably traveled in interstate commerce, and accepted payment from credit card machines and other moneys that originate from out of New York State." (*Id.*)

Plaintiff claims she worked up to 93 hours in a given work week, yet Defendants failed to pay her the appropriate wages for both regular and overtime hours worked. (ECF No. 13 at ¶¶ 12-13.) Instead, she was only compensated a weekly salary of $800 which was to include the overtime hours she worked. (*Id.* at ¶ 15.) Furthermore, Defendants failed to pay her the spread-of-hours pay she was entitled to upon completing a shift of 10 hours or more. (*Id.* at ¶ 17.)

As to recordkeeping, Plaintiff alleges that Defendants did not maintain accurate records of her hours worked, failed to post notices explaining the wage and hour requirements in her native language, and did not provide Plaintiff with accurate wage statements demonstrating her hours worked which violates both the FLSA and NYLL. (*Id.* at ¶¶ 18-21.) As a result, she claims she was injured because she was "unable to determine that she had been underpaid throughout her employment." (*Id.* at ¶¶ 22-23.)

---

[2] The restaurant operates as Jazeera Indian Hyderabadi Restaurant, serving Hyderabadi Dum Biryani, which is a style of biryani with roots from Hyderabad, India. https://www.jazeerarestaurant.com/asianrestaurant.

## PROCEDURAL BACKGROUND

Plaintiff initially filed the Complaint on July 27, 2023.  (ECF No. 1.)  Upon receiving no response from Defendant Jazeera after the summons was returned executed (ECF No. 6), Plaintiff requested a certificate of default against Defendant Jazeera (ECF No. 7) and the Clerk of the Court entered default against Defendant Jazeera shortly after. (ECF No. 8.)  Prior to filing her motion for default judgment though, Plaintiff filed a motion to amend the Complaint to add a new Defendant—Defendant Mohammed.  (ECF No. 12.)  The request was granted (*see* Electronic Order dated Mar. 7, 2024) and Plaintiff amended the Complaint on March 14, 2024. (ECF No. 13.)  Plaintiff served both Defendants with the Amended Complaint on the same day (ECF No. 14) and it was returned executed on April 29, 2024. (ECF Nos. 15-16.)  To date, Defendants have not appeared whatsoever.

Plaintiff again requested a certificate of default against both Defendants (ECF No. 17) and the Clerk entered default as to both of them. (ECF No. 19.)  Plaintiff initially filed her motion for default judgment on July 29, 2024.  (ECF No. 21.)  However, upon the undersigned's preliminary review, the Court found that Plaintiff (1) failed to comply with the Servicemembers Civil Relief Act ("SCRA"), 50a U.S.C. § 521 pursuant to E.D.N.Y. Local Civ. R. 55.2(a)(1)(B) and (2) failed to show that she mailed all accompanying documents for the motion for default judgment to Defendants.  (Electronic Order dated Aug. 3, 2024.)  Plaintiff has since filed the missing documents.  (ECF Nos. 22 and 24.)

In her motion, Plaintiff requests an entry of default judgment in her favor against Defendants.  Regarding liability, Plaintiff avers that (i) her claims are timely under the NYLL and FLSA, (ii) Defendant Jazeera is subject to enterprise coverage under the FLSA and is a covered employer under the NYLL; (iii) Defendant Mohammed was Plaintiff's employer under

both the FLSA and NYLL; (iv) Defendants are equally liable for Defendants' FLSA and NYLL violations; (v) Defendants violated the FLSA's and NYLL's overtime provisions; and (vi) Defendants violated the NYLL's spread of hours provisions.  (*See* ECF No. 21-1 at pp. 15-21.)

As to damages, Plaintiff requests:

(1) awarding Plaintiff damages of $24,499.29 for unpaid overtime wages under the FLSA and NYLL and for unpaid spread of hours compensation under the NYLL;

(2) awarding Plaintiff damages of $24,499.29 for liquidated damages under the NYLL;

(3) awarding Plaintiff damages of $5,000.00 for violations of NYLL § 195(1);

(4) awarding Plaintiff damages of $5,000.00 for violations of NYLL § 195(3);

(5) awarding Plaintiff's counsel attorneys' fees in the amount of $12,892.50,

(6) awarding Plaintiff's counsel reimbursement of advanced litigation expenses in the amount of $678.83,

(7) awarding pre-judgment interest under the NYLL; and

(8) awarding post-judgment interest under federal law; or

(9) alternatively, scheduling an evidentiary hearing to establish the amount of damages owed to Plaintiff.

(*Id.* at pp. 12-13.)

## **THE LEGAL FRAMEWORK**

Plaintiff's motion for default judgment was filed after July 1, 2024, which means that the newly imposed Local Rules of this District apply.[3]  There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55.  First, as here, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action.  *See* Fed. R. Civ. P. 55(a); *see*

---

[3] *See* E.D.N.Y. Local R. 1.1 ("These Local Civil Rules take effect on July 1, 2024 (the "Effective Date") and govern actions pending or filed on or after that date. For actions pending on the Effective Date, if fewer than 14 days remain to perform an action governed by these Rules, the provisions of the previous Local Rules effective on June 30, 2024 will govern.").

*also* E.D.N.Y. Local R. 55.1(b) and 55.2. After the clerk's certificate of default is issued and posted on the docket, a party may apply for entry of a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local R. 55.2. The decision to grant a motion for default is left to the discretion of the district court. *United States v. Dougherty*, No. 15-cv-554 (ADS) (AKT), 2016 WL 5112063, at *3 (E.D.N.Y. Aug. 1, 2016), *report and recommendation adopted*, 2016 WL 4705549 (E.D.N.Y. Sep. 7, 2016). Given that the Clerk has already entered default against Jazeera Restaurant and Mohammed (ECF No. 19), the Court is primarily concerned with Plaintiff's compliance with E.D.N.Y. Local R. 55.2.

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-cv-1878 (RJD) (JMA), 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (finding that a default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true).

However, a plaintiff must still demonstrate that the allegations set forth in the Complaint state valid claims. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (alterations omitted)). The Court must therefore ensure: (i) Plaintiff satisfied all the required procedural steps in moving for default judgment, *see* Local Civ. R. 55.2; and (ii) Plaintiff's allegations, when accepted as true, establish liability as a matter of law, *see Finkel*, 577 F.3d at 84.

## **DISCUSSION**

### I.   **Procedural Compliance**

Local Civil Rule 7.1 requires motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion.  E.D.N.Y. Local R. 7.1(a)(1) - (3).  Local Civil Rule 55.2 requires that a party moving for default judgment append to its application an affidavit or declaration demonstrating that (A) the Clerk has entered default against the Defendants, (B) the movant has complied with the SCRA, and (C) that the individual defaulting defendant is not a minor or incompetent person, as well as all papers required by E.D.N.Y. Local Rule 7.1 (*supra*), and a proposed judgment and certificate of service that all documents in connection with the motion for default judgment has been personally served on or mailed to the defaulting defendants' residence or business address.  E.D.N.Y. Local R. 55.2(a)(1)—(3).

Recently added under the Local Rules, is that the moving party "must file a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs."  E.D.N.Y. Local R. 55.2(c).

With respect to the non-military affidavit, before a default judgment can be entered for the plaintiff, the SCRA commands that the Court "require the plaintiff to file with the court an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit."  50 U.S.C. App. § 521; *ADI Glob. Distribution v. Green*, No. 20-CV-03869 (AMD) (JMW), 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023) (same), *report and recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023).  "The non-military affidavit must be based not only on an investigation conducted after the commencement of an

action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered." *Apex Mar. Co. v. Furniture, Inc*., No. 11-CV-5465 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012).  To satisfy this requirement, "[c]ertification . . . of a defendant's military status can be obtained from the Department of Defense's Servicemembers Civil Relief Act website." *ADI Glob. Distribution*, 2023 WL 3355049, at *3.

Initially, Plaintiff failed to fully comply with the above requirements, having failed to demonstrate that she mailed all documents to Defendants and adhere to the SCRA mandate. (Electronic Order dated Aug. 3, 2024.)  However, Plaintiff has cured those deficiencies.  (ECF Nos. 22, 24.)  Here, the motion against the defaulting Defendants complies with Local Rule 7.1 and Local Rule 55.2(a)(2) because it includes (1) a notice of motion (ECF No. 21); (2) a memorandum of law (ECF No. 21-1); (3) affidavits and exhibits to support Plaintiff's contentions (ECF No. 21-2); and (4) a proposed order detailing the proposed judgment (ECF No. 21-11).  The motion further complies with Local Rule 55, as Plaintiff has properly attached and submitted a declaration affirming that the Certificate of Default was entered by the Court on June 10, 2024 (ECF No. 21-6) and that Defendant Mohammed is not a minor or incompetent person (ECF No. 17-2.).   The parties have also filed an affidavit of service of the requisite documents as to the Defendants via first class mail (ECF No. 22) to its Motion.

Regarding the SCRA, Plaintiff's counsel has submitted a declaration complying with the Local Rules in that it describes the search performed for Defendant Mohammed on the SCRA website which yielded no results and has additionally attached the report from the Department of Defense's Manpower Data Center stating the same.  (ECF No. 24 at 2; *see also* ECF No. 24-1 and 24-2); *See McLaugulin v. Onanafe Management Solutions LLC*, No, 22-CV-6792 (PKC) (MMH), 2024 WL 4184485, at *6 (E.D.N.Y. Sept. 14, 2024) (finding the SCRA requirement is

complied with where plaintiff files a declaration stating that individual defaulting defendant was not a member of the military, after performing a search of the Department of Defense database, and was neither a minor nor incompetent person).[4]

Finally, Plaintiff has adhered to Local Rule 55.2(c) by filing a statement of damages demonstrating the proposed damages and based for the element of damages.  E.D.N.Y. Local R. 55.2(c).  As to Plaintiff's damages, Plaintiff has submitted a breaking down Plaintiff's actual damages, liquidated damages, statutory damages, and interest.  (ECF No. 21-8.)  Further, both the attorneys' and Plaintiff's declarations (ECF Nos. 21-2 and 21-7) discuss the basis for the damages—namely that Defendants violated various provisions of the FLSA and NYLL.  As to attorneys' fees and costs, Plaintiff's counsel has submitted a declaration outlining the law firm's background and each attorney's respective experience as well as attorney billing records (ECF No. 21-9) and a list of litigation costs (ECF No. 21-10) sufficient for the Court to assess the reasonableness of the attorneys' fees, as discussed below.  (ECF No. 21-2 at 6-10.); *cf. Hicksville Water Dist. v. Jerry Spiegel Assocs., Inc.,* 19-CV-6070 (PKC) (RML), 2024 WL 4043682, at *2 (E.D.N.Y. Sept. 4, 2024) (finding that "Plaintiff failed to file a statement of damages…as required by Rule 55.2(c)" where plaintiff submitted an expert opinion to discuss costs but did not "specify the type of damages sought in this action, nor [wa]s there any mention of estimated interest, attorneys' fees, and costs" and additionally failed "to include any back-up documentation to support th[o]se amounts.").  Accordingly, the undersigned finds that both Motions for Default Judgment are procedurally proper and turns to the merits of the Motions.

---

[4] The undersigned notes that the SCRA is inapplicable as to the corporate Defendant, Jazeera Restaurant. *See Guanglei Jiao v. Shang Shang Qian Inc*., No. 18-CV-5624 (ARR) (VMS), 2020 WL 6370148, at *9 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted*, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (only applying service members civil relief act to the individual defendants).

## II.    The Default Factors

In evaluating whether to grant a default judgment, courts consider: (i) whether the defendant's default is willful; (ii) whether the defendant has a meritorious defense to plaintiff's claims; and (iii) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied.  *See Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317 (ADS)(AKT), 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013); *cf. Brown v. Gabbidon*, No. 06-CV-8148 (HB), 2007 WL 1423788, at *4 (S.D.N.Y. May 14, 2007) ("A discussion of prejudice, willfulness and meritorious defenses is required once there is an entry of default or a default judgment and the court considers a request by a defaulting party to vacate that entry pursuant to Rules 55(c) or 60(b).").

Consideration of these three factors leads to a recommendation that an entry of default judgment is appropriate where, as here, Defendants have wholly failed to appear and present any defense, and Plaintiff is left with no further steps to take to secure relief.  *See ADI Glob. Distribution*, 2023 WL 3355049 at *4; *see also Flooring Experts*, *Inc.*, 2013 WL 4042357 at *3 (when a defendant is continuously and completely unresponsive the failure to respond is considered willful), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013); *Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11-CV-46 (JS) (AKT), 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012) ("[T]he Court is unable to make a determination whether the Defendants have a meritorious defense since no such defense has been presented to the Court"), *report and recommendation adopted*, 2012 WL 832452 (E.D.N.Y. Mar. 12, 2012); *Northwell Health, Inc. v. Northwell Staffing Agency, LLC*, No. 17-CV-1611 (DRH)

10

(AKT), 2018 WL 1525803, at *9 (E.D.N.Y. Mar. 1, 2018) (noting that denying the motion for default judgment would be prejudicial to Plaintiff since "there are no additional steps available to secure relief in this Court"), *report and recommendation adopted*, 2018 WL 1525698 (E.D.N.Y. Mar. 28, 2018) (citations omitted).

### III.    Jurisdiction
#### a.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). Since a judgment rendered against a defendant over whom the Court does not have personal jurisdiction can be vacated pursuant to Rule 60(b)(4), it "preserves judicial economy for the court to assess personal jurisdiction from the outset and thereby avoid rendering a void judgment." *Foshan Shunde Xinrunlian Textile Co. v. Asia 153 Ltd.*, No. 14-cv-4697 (DLI) (SMG), 2017 WL 696025, at *2 (E.D.N.Y. Jan. 30, 2017). Here, "a *sua sponte* assessment of personal jurisdiction is appropriate" because Defendants have failed to appear in this action. *Id*.

For a court to exercise personal jurisdiction: (i) a plaintiff must complete proper service of process, (ii) there must be a statutory basis for personal jurisdiction that renders such service of process effective, and (iii) the exercise of personal jurisdiction must comport with constitutional due process principles. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673. F.3d 50, 60–61 (2d Cir. 2012).

As an initial matter, service was procedurally proper here. Rule 4(c) requires that a summons must be served with a copy of the Complaint and by a person who is at least 18 years old and not a party to the case. *See* Fed. R. Civ. P. 4(c). Additionally, Rule 4(e) requires that to serve individuals either by: (i) delivering a copy of the summons and of the complaint to the

individual personally; (ii) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (iii) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. *See* Fed. R. Civ. P. 4(e).  Here, Defendant Mohammed was served at his assumed place of residence by delivering a copy of the summons and complaint upon another resident, Oscar Romero.  (ECF No. 21-5.)  Romero is between the ages of 25 to 40 years of age and therefore of suitable age and discretion at Defendant Mohammed's residence.  (*Id.*); *Velez v. Vassallo*, 203 F. Supp. 2d 312, 325 (S.D.N.Y. 2002) (quoting N.Y. C.P.L.R. 308(2)) (Fed. R. Civ. P. 4(e)(1) "permit[s] service on individuals, just as service on corporations, to be made pursuant to the law of the state in which the district court is located. Under New York law, personal service may be effected on an individual by 'delivering the summons within the state to a person of suitable age and discretion at the [person's] actual place of business . . . and by mailing the summons to the person to be served at his or her last known residence or . . . actual place of business.'").  Therefore, service was proper for the individual Defendant.

Furthermore, Rule 4(h) provides that a domestic or foreign corporation may be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." *See* Fed. R. Civ. P. 4(h)(1)(B); *Hartford Fire Ins. Co. v. Queens Cnty. Carting, Inc.*, No. 20-CV-01844 (NSR), 2022 WL 254367, at *2 (S.D.N.Y. Jan. 27, 2022) (quoting Fed. R. Civ. P. 4(h)(1)(A)). Under New York law, service on a corporation may be made by "personally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee" and "shall be complete

when the secretary of state is so served."  N.Y. Bus. Corp. Law § 306(b)(1).  Here, the Affidavit

of Service states that Defendant Jazeera was served through the New York Secretary of State by

delivering two copies with Authorized Agent Sue Zouky.  (ECF No. 21-4 at 2); *see Bergman v.*

*Kids by the Bunch Too, Ltd.*, No. 14-CV-5005 (DRH) (SIL), 2018 WL 1402249, at *4 (E.D.N.Y.

Feb. 16, 2018) (holding service was proper where the corporate defendant was served when the

Summons and Complaint was delivered to the New York Secretary of State); *Hartford Fire Ins.*

*Co.*, No. 20-CV-01844 (NSR), 2022 WL 254367, at *2 (same).  Accordingly, service was proper

for Jazeera Restaurant Inc.

 "Personal jurisdiction in a diversity case is determined by the law of the state in which

the district court sits."  *SAS Grp., Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 547

(S.D.N.Y. 2003) (citing *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir.1999)). The

same goes for a case arising under federal question jurisdiction unless the applicable federal

statute contemplates nationwide service of process, which, as relevant here, the FLSA does not.

*See Pettenato v. Beacon Health Options, Inc.,* 425 F. Supp. 3d 264, 277 (S.D.N.Y. 2019).   Thus,

the Court first looks to New York law for the purpose of determining personal jurisdiction over

Defendants in New York.  Then, the Court evaluates whether the "exercise of jurisdiction under

state law satisfies federal due process requirements of 'fair play and substantial justice.'"  *Mortg.*

*Funding Corp. v. Boyer Lake Pointe, LLC*, 379 F. Supp. 2d 282, 286 (E.D.N.Y. 2005) (quoting

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  Under New York law there are two

routes for a court to exercise personal jurisdiction.  The Court considers each in turn below.

### i.  General Jurisdiction

 The Court considers this issue in light of the Supreme Court's pronouncements in

*Daimler* and *Goodyear*, where the Court stated that other than in the "exceptional case," the

exercise of general jurisdiction is confined to a corporation's "place of incorporation and principal place of business." *See Aybar v. Aybar*, 177 N.E.3d 1257, 1265 (2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117 (2014)); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)). Moreover, the court has general jurisdiction over individuals who are domiciled within the forum state. Here, Defendant Jazeera is a New York Corporation, with its place of business in Hicksville, New York. (ECF No. 1 at ¶ 8.) Thus, the Court has general jurisdiction over Defendant Jazeera. The Court additionally has general jurisdiction over individual Defendant Mohammed[5] who was served in New York. *See Burham v. Superior Court of Cali.*, 495 U.S. 604, 610–11 (1990) ("Among the most firmly established principles of personal jurisdiction" is that courts have general jurisdiction over those who are physically present in the state and who were properly served with process while in the state, thereby empowering courts to "retain jurisdiction to enter judgment against him, no matter how fleeting his visit."); *J McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880–81 (2011) ("Presence within a State at the time suit commences through service of process . . . support[s] exercise of the general jurisdiction of the State's courts . . . ."); *see also Reich v. Lopez*, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014) ("For general jurisdiction over an individual to comport with due process, Defendants must be domiciled in New York, served in New York, or have otherwise consented to the court's jurisdiction.").

### ii. Specific Jurisdiction

Second, pursuant to New York's long-arm statute, CPLR 302(a), a court "may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state," as long as the Plaintiff's "cause of action aris[es] from"

---

[5] The Amended Complaint fails to list whether Defendant Mohammed is a citizen of New York.

that "transact[ion]." CPLR 302(a). This is known as specific jurisdiction and sometimes referred to as long-arm jurisdiction. To exercise specific jurisdiction through New York's long-arm statute, "two requirements must be met: (1) The defendant must have transacted business within the state[6]; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan v. Smith,* 52 N.Y.2d 268, 273, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981)).

"Section 302(a) also requires that the claims asserted 'aris[e] from any of the acts' that provide the basis for exercising jurisdiction." *Sea Tow Servs. Int'l, Inc v. Pontin.*, 472 F. Supp. 2d 349, 360 (E.D.N.Y. 2007) (quoting CPLR 302(a)). "[A] claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon.'" *Id.* (quoting *Sole Resort,* 450 F.3d at 103). "A plaintiff must establish the court's jurisdiction with respect to each claim asserted." *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2003); *see also Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 475 F. Supp. 2d 456, 460 (S.D.N.Y. 2007) (noting that "personal jurisdiction must be determined on a claim-by-claim basis").

---

[6] "To determine whether a party has 'transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006). Courts consider the following factors:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward, Inc.*, 362 F.3d 17 at 22 (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.1996) (internal citations omitted)).

Here, the individual Defendant was served at his business residence in New York. Further, Defendant Jazeera operates its business in Hicksville, New York. Thus, because Plaintiff claims violations of the FLSA and NYLL related to overtime wages and wage statements and notices in New York, there is a basis for exercise of this Court's jurisdiction.

"The exercise of long arm jurisdiction over Defendants by a New York court must also satisfy constitutional due process standards." *Id.* To satisfy the requirements of due process, the defendant's activities in New York must constitute "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum States, thus invoking the benefits and the protection of its laws." *NW Direct Design & Mfg., Inc. v. Glob. Brand Mktg., Inc.,* No. 98-cv-4756 (LAP), 1999 WL 493348, at *3 (S.D.N.Y. July 12, 1999) (quoting *Burger King*, 471 U.S. at 475). This involves a two-fold inquiry: (1) "minimum contacts," and (2) "reasonableness." *Sea Tow Servs. Int'l*, 472 F. Supp. 2d at 360.

*First*, the Court is satisfied that Plaintiff's claims arise out of Defendants' contacts with New York and support specific jurisdiction because this lawsuit stems from those very business transactions. *Second*, the exercise of specific jurisdiction is reasonable. The factors supporting this conclusion include:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Id*. (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Calif., Solano Cty.*, 480 U.S. 102, 113 (1987)).

Plaintiff is a New York resident and brought this case in New York. Moreover, the individual Defendant operates his business in New York. The Court finds the remaining factors

16

to be neutral, and given Defendants' default, it has not been provided, nor does it find, any reason why exercise of specific jurisdiction would be unreasonable.  Accordingly, based upon the foregoing, the undersigned finds that there is a sufficient basis to exercise personal jurisdiction over both Defendants.

## IV.    <u>Liability</u>

When a defendant defaults, the court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]"  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A defendant's default is considered an admission of all of well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016).

### A.  Statute of Limitations

Before delving into the merits of Plaintiff's claims, the Court must first satisfy itself that Plaintiff has brought them in a timely manner.  "The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years.'"  *Whiteside v. Hover-Davis, Inc*., 995 F.3d 315, 319 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)). "When a defendant defaults, the violation is considered willful and the three-year statute of limitations applies." *Esquivel v. Lima Rest. Corp*., No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *5 (E.D.N.Y. Sept. 29, 2023) (*quoting Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011)).  The NYLL imposes a six-year limitation for wage coverage.  *See* N.Y. Lab. Law §§ 198(3), 663(3).  The statute of limitations for both the FLSA and the NYLL begin to run

when the employee begins working for the employer.  *See Queens Convenience Deli Corp.*, 2011 WL 4962397, at *2.

Here, Plaintiff asserts that her claims are timely. (ECF No. 21-1 at p. 4.) Notably, Plaintiff commenced this action on July 27, 2023.  (*See* ECF No. 1.)  Plaintiff began working for Defendant Jazeera on or about February 15, 2023 until approximately June 6, 2023.  (*Id*. at ¶ 15.) Thus, Plaintiff is well within the applicable statute of limitations under both the FLSA and NYLL.

**B.  FLSA Overtime Claim**

Plaintiff claims that Defendants failed to pay her overtime wages in excess of forty (40) hours per workweek that she was statutorily owed.  (ECF No. 13 at ¶ 14.)  To successfully plead an overtime claim under the FLSA, a Plaintiff must establish: "(1) the employer was an enterprise engaged in commerce or in the production of goods for commerce; (2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) that the plaintiff worked in excess of forty (40) hours in a given workweek and did not receive overtime compensation for such work." *Zavada v. Mehbizar, Inc.*, No. 23-cv-03682 (OEM) (ARL), 2024 WL 759351, at *1 (E.D.N.Y. Feb. 23, 2024) (citing *Erdemir v. Allstate Marble & Granite, Kitchens & Baths, Inc.*, 704 F. Supp. 3d 337, 357 (E.D.N.Y. 2023).

**1.  Whether Defendants Were Engaged in Commerce or in the Production of Goods for Commerce**

Employers are subject to FLSA's overtime requirements if the employees are "engaged in commerce or in the production of goods for commerce" or "employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 207(a)(1).  Courts have deemed these two methods as individual coverage and enterprise coverage, respectively.  *Cao v.*

*Flushing Paris Wedding LLC*, 727 F. Supp. 3d 239, 273 (E.D.N.Y. 2024); *Queens Convenience Deli Corp*., 2011 WL 4962397 at *6.

### a. Enterprise Coverage

Enterprise coverage is defined statutorily as when an employer has: (i) employees engaged in commerce or in the production of goods for commerce; and (ii) an annual gross volume of sales greater than $500,000.  29 U.S.C. § 203(s)(1)(A).  The burden on plaintiffs to establish enterprise coverage is light.  *Oyenuga v. Presidential Sec. Servs. LLC,* No. 22-CV-4972 (DG) (RER), 2023 WL 7687237, at *3 (E.D.N.Y. Sept. 25, 2023) (recognizing enterprise coverage notwithstanding conclusory allegations in the complaint).  Courts may make logical inferences based on the nature of the business to find that employees are engaged in commerce. *See Fermin v. Las Delicias Peruanas Rest., Inc*., 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) (inferring a restaurant is engaged in commerce to procure cooking supplies).

Although courts may make such logical inferences, parroting statutory language without including specific facts may not be sufficient to meet enterprise coverage.  *Oyenuga*, 2023 WL 7687237, at *4 ("Absent specific facts, enterprise coverage cannot be inferred."); *see also Zavada*, 2024 WL 759351, at *3 ("Plaintiff's barebones invocation of the statutory language under the FLSA does not suffice to plead enterprise coverage under the FLSA.").  However, courts have noted "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Soto v. Miss Laser Inc.*, No. 19-CV-4745, 2023 WL 319547, at *4 (E.D.N.Y. Jan. 19, 2023).  As such, in the context of a default, some courts do not require additional factual allegations to establish enterprise coverage and the statutory language may be satisfactory.  *See Gao v. Jian Song Shi*, No. 18 CV 2708 (ARR) (LB), 2021 WL 1949275, at *5 (E.D.N.Y. Apr. 30, 2021).

19

Here, the Amended Complaint alleges that Defendant Jazeera "engaged in interstate commerce and had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce . . . all of which undoubtably traveled in interstate commerce, and accepted payment from credit card machines and other moneys that originate from out of New York State." [7] (ECF No. 13 at ¶ 9.) Further, Plaintiff's declaration states that Defendant Jazeera was an enterprise "engaged in interstate commerce" as its employees, like Plaintiff, handled goods "including but not limited to . . . food and ingredients, meat, fish, poultry, kitchenware, utensils, cleaning supplies, office supplies, receipt papers, pens, and paper . . . ." (ECF No. 21-7 at ¶ 5) Most of these goods, as Plaintiff contends, "originated in states other than New York". (*Id.*) Notably, Plaintiff asserts that she personally "handl[ed] or otherwise work[ed] with goods or materials . . . many of which undoubtably traveled in interstate commerce from outside of New York State". (*Id.*)

Such allegations are sufficient to show that Plaintiff was engaged in interstate commerce for enterprise coverage purposes. *Compare Rocha v. Bakhter Afghan Halal Kababs, Inc.* 44 F. Supp. 3d 337, 346–47 (E.D.N.Y. 2014) (determining the allegations that plaintiff "regularly handle[d] goods in interstate commerce, such as dishwashing liquid, olive oil and meat, and other supplies produced outside of the State of New York" satisfied the first enterprise coverage prong), *with Singh v. Mowla,* No. 19-CV-4687 (PKC) (LB), 2022 WL 17820099, at *18 (E.D.N.Y. Sept. 30, 2022) (recommending a finding that enterprise coverage did not exist where plaintiffs only alleged that defendant purchased and handled goods but did not state whether "they or other employees engaged in interstate commerce"), *and Yang v. Zhou's Yummy*

---

[7] Specifically, Plaintiff asserts the goods and materials moving or being produced for commerce were "including but not limited to use of cleaning solvents, mops, brooms food products, lamb, pork, beef, poultry, fish, product, vegetables, fruits, grains, cheese, dairy products, cookware, utensils, receipt papers, pens, and paper". (ECF No. 13 at ¶ 9.)

*Restaurant, Inc.*, No. 19-CV-5203 (CBA) (SJB), 2023 WL 2347885, at *12 (E.D.N.Y. Mar. 3, 2023) (concluding enterprise coverage was not established where the complaint failed to tie "Defendants business to interstate commerce—either by describing what the employees do and tying that to interstate activity, or by describing what the employees produce and tying that to interstate activity.").

Moreover, as noted *supra*, courts may infer that Jazeera engages in interstate commerce by nature of the restaurant enterprise itself. *See, e.g., Fermin*, 93 F. Supp. 3d at 33 (holding that "it is reasonable to infer that the myriad of goods necessary to operate a Peruvian restaurant . . . do not exclusively come from New York State" and that goods like "foodstuffs, kitchen utensils, cooking vessels, cleaning supplies, paper products, furniture, and more [were] moved or were produced in interstate commerce"); *see also Esquivel v. Lima Restaurant Corp.*, No. 20-CV-2914 (ENV)(MMH), 2023 WL 6338666, at *6 (E.D.N.Y. Sept. 23, 2023) ("[I]t is reasonable to infer that the tools and goods required to operate a restaurant engaging in interstate commerce . . . do not exclusively come from New York State."); *see also Cabrera v. Canela*, 412 F. Supp. 3d 167, 179 (E.D.N.Y. 2019) ("[I]t would defy logic to assume that none of the food, drinks, or materials served or used in the restaurant originated out of state.").

Under the second prong to establish enterprise coverage, Plaintiff alleged that Defendant Jazeera "had annual gross revenue of at least $500,000." (ECF No. 13 at ¶ 9.) Ordinarily, such conclusory statements are insufficient. *See, e.g., Dan An Zhang v. L.G. Apparel Inc.*, No. 09-CV-3240 (KAM), 2011 WL 900183, at *3 (E.D.N.Y. Feb. 18, 2011) (finding defendants, manufacturers of clothing apparel, failed to establish defendants' FLSA liability under enterprise coverage as plaintiff offered "no supporting facts" other than the conclusory statement that "each defendant has had gross revenue in excess of $500,000"); *Leo v. Province Therapeutics, LLC*,

No. 23-cv-5418 (NJC) (JMW), 2024 WL 456824, at *6 (E.D.N.Y. Feb. 6, 2024) (noting plaintiff backed up her assertion "by supplying rough calculations" that the Corporate Defendant, a provider of child services, "likely brought in around $1,200,000 each year . . . .").

Such conclusory statements, however, suffice where, as here, it is reasonable to infer a restaurant engaging in interstate commerce exceeds $500,000 in annual revenue. *See, e.g., Cabrera*, 412 F. Supp. 3d at 174, 179 (finding enterprise coverage after noting plaintiff's allegation that the restaurant-defendant "had gross receipts of greater than $500,000" was sufficient where "it is eminently reasonable to infer" that it does more than $500,000 in annual business given the nature of defendants' restaurant); *Marine v. Vieja Quisqueya Restaurant Corp.*, No. 20 CV 4671 (PKC) (RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022) (holding enterprise coverage existed and following a line of cases that adopted the approach that plaintiff may allege that a restaurant has annual gross revenues of at least $500,000 without more as it is inferred from the type of business enterprise that the interstate commerce and requisite dollar amount prongs were met); *Yang*, 2023 WL 2347885, at *5 (finding that plaintiff, a cook in defendant's restaurant, sufficiently proved the second prong of enterprise coverage by merely asserting that "[defendant's restaurant] has gross sales in excess of five hundred thousand dollars ($500,000) per year"); *Acosta v. DRF Hospitality Management LLC*, No. 18 CV 346 (DRH) (AKT), 2019 WL 1590931, at *9 (E.D.N.Y. Mar. 13, 2019) ("Plaintiff alleges that at all relevant times, [Defendant- Restaurant] had employees engaged in commerce or in the production of goods for commerce and had annual gross revenues of at least $ 500,000. Plaintiff has therefore sufficiently pleaded that [Defendant-Restaurant] is subject to the FLSA.").

Indeed, two cases bear remarkable similarity to the instant case. For instance, in *Santos*, the court concluded that plaintiff established enterprise coverage under the FLSA. *Santos v.*

*Cancun and Cancun Corp.*, No. 21-CV-0192 (LDH) (RER), 2022 WL 1003812, at *4 (E.D.N.Y. Feb. 17, 2022). There, defendants were owners of a Mexican restaurant that, as plaintiff asserted, "ha[d] annual gross revenues of more than $500,000". *Id.* at *1-2. The court noted that such an allegation, "though somewhat conclusory," was adequate to infer that the FLSA applied as defendants "owned and operated a Mexican restaurant that handles a wide range of ingredients and supplies that traveled through interstate commerce". *Id.* at *4.

Similarly, in *Lopez*, the court determined that plaintiff's allegations sufficiently demonstrated that the corporate restaurant-defendant was covered by the FLSA. *Lopez v. Martha's Cocina Mexicana, LLC*, No. 23-CV-2053 (LDH) (TAM), 2023 WL 9603828, at *5 (E.D.N.Y. Dec. 27, 2023). This restaurant-defendant, as plaintiff contended in its complaint, "had annual gross volume of sales made or business done of over $500,000". *Id.* Though "largely conclusory," the court accepted such an assertion because a court may infer that a restaurant does the "requisite dollar amount" where goods and materials used in operating a restaurant business are moved or produced in interstate commerce. *Id.*

Here, though Plaintiff fails to provide an explanation as to how Defendant Jazeera exceeds the $500,000 statutory requirement, such failure is not fatal to establishing enterprise coverage. For these reasons, the undersigned recommends finding that Plaintiff has established enterprise coverage over Defendant Jazeera under the FLSA.

### b. Individual Coverage

Individual coverage is implicated when "a substantial part of [an] employee's work [is] related to interstate commerce." *Gao v. Savour Sichuan Inc.,* No. 19-CV-2515 (JPC), 2024 WL 664718, at *14 (S.D.N.Y. Feb. 16, 2024) (quoting *Boekemeier v. Fourth Universalist Soc. in City of N.Y.*, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000)). Commerce is known as the "trade,

23

commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). As such, employees are "engaged in commerce within the meaning of the [FLSA] when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof". *Santacruz v. Blok Chocolatier LLC*, No. 19-CV-544-EK-SJB, 2021 WL 4341103, at *3 (E.D.N.Y. June 23, 2021) (internal quotations omitted). Indeed, employment activities that "simply affect or indirectly relate to interstate commerce" are insufficient to establish individual coverage. *See Zavada*, 2024 WL 759351 at *3. Similarly, mere recitation of statutory language is insufficient to establish individual coverage. *See Jones v. SCO Fam. of Servs.*, 202 F. Supp. 3d 345, 351 (S.D.N.Y. 2016).

Here, Plaintiff has failed to provide a nexus between his employment and interstate commerce or otherwise make allegations to demonstrate she engaged in the production of goods to establish individual coverage. The Amended Complaint and Plaintiff's Declaration assert that Plaintiff, as a cook, handled or otherwise worked with materials or goods that were moved in or produced for commerce and which traveled in interstate commerce. (ECF No. 13 at ¶ 9; ECF No. 21-7 at ¶ 5.)

These conclusory allegations do not indicate a single interstate component to Plaintiff's work. *See Santacruz,* 2021 WL 4341103, at *4 ("As a basic rule, if the plaintiff did not have any contact with out-of-state customers or businesses, he cannot be individually covered under the FLSA.") (internal citations omitted). For instance, in *Zavada*, Judge Merchant concluded that plaintiff, a kitchen cook, failed to adequately plead individual coverage under the FLSA. 2024 WL 759351, at *3. There, plaintiff asserted that his duties "collectively constitute a substantial

part of the movement of goods" and that "food, as a tangible item, undoubtedly involves interstate commerce". *Id.* In rejecting these assertions, the court noted that plaintiff "has not alleged a single interstate component to his work for Defendants". *Id.* Notably, though a kitchen cook prepares and cooks food that may have traveled through interstate commerce, plaintiff's work itself did not involve an interstate component. *Id.*

In addition, Plaintiff's Memorandum of Law contains no further facts to support the allegations made in the Amended Complaint. For these reasons, individual coverage has not been established.

### 2. The Employer-Employee Relationship under the FLSA

Even if coverage as to the enterprise or individual is established, the Court next analyzes whether Plaintiff has established an employer-employee relationship under the FLSA. To hold defendant accountable, plaintiff must also establish an employee-employer relationship between the parties. *See Zavada,* 2024 WL 759351, at *3–4; *see also Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH) (SJB), 2019 WL 8381264, at *6 (E.D.N.Y. Dec. 9, 2019). "Employee" is broadly defined under the FLSA as any "individual employed by an employer." 29 U.S.C. § 203(e)(1). The FLSA defines an employer as "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Employ" is defined as to "suffer or permit to work." 29 U.S.C. § 203(g). Pleadings that allege employee status are sufficient to qualify as an employee under the FLSA. *Flushing Paris Wedding LLC*, 727 F. Supp. 3d at 274 ("Each Plaintiff herein satisfies this definition insofar as they allege that Defaulting Defendants employed them in various positions within this statutory meaning.").

As the Second Circuit has observed, the employer-employee inquiry should be grounded in "economic reality rather than technical concepts." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). To determine if a defendant is an employer, courts analyze whether the employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 105 (quoting *Carter v. Dutchess Community College,* 735 F.2d 8, 12 (2d Cir. 1984)). None of these factors is dispositive but courts must look at the "totality of the circumstances" when applying this test. *See Erdemir*, 704 F. Supp. 3d at 358.

Here, Plaintiff alleges she was employed by Defendants and therefore qualified as an employee under the FLSA. (ECF No. 13 at ¶¶ 10-11.) According to the Amended Complaint, Plaintiff states that Defendant Mohammed was, at all times, "active in the day to day management of the corporate defendant, including the payment of wages to the Plaintiff and determining that wages were paid, scheduling and delegation of assignments, [and] discipline of Plaintiff". (ECF No. 13 at ¶ 10.) Moreover, Defendant Mohammed "had the power to hire and fire employees and approve all personnel decisions, was responsible for maintaining personnel records relating to Plaintiff's employment, and is liable to Plaintiff as an 'employer' within the meaning of the FLSA and NYLL". (*Id.*) Thus, construing all of Plaintiff's allegations in his favor, Plaintiff has established that Defendant Mohammed is an "employer" pursuant to 29 U.S.C. § 203(d). *See Cabrera*, 412 F. Supp. 3d at 179 (finding plaintiff's allegations, *inter alia*, regarding control over daily operations and management to be sufficient to establish the relationship between employers and employee).

Furthermore, Plaintiff has adequately set forth facts indicating that both Defendants, Jazeera Restaurant and Mohammed should be jointly and severally liable for the overtime wages. The court in *Pichardo* stated:

> The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, [and is therefore] jointly and severally liable under the FLSA for unpaid wages. In the context of a default, joint and several liability may be established based on limited detail about the relationship of defendants.

*Pichardo v. Fifty-Five Long Island Corp.*, No. 20-CV-2652 (CBA) (RML), 2021 WL 4173654, at *10–11 (E.D.N.Y. Aug. 2, 2021) (internal quotations omitted) (citations omitted).

Here, although the Complaint and Memorandum of Law are scant regarding Defendant Jazeera's control, courts in this District have found that where the complaint alleges the individual defendant's control of the day-to-day operations, coupled with their default, it is sufficient to impose joint and several liability on both defendants. *See Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 128–29 (E.D.N.Y. 2011) (holding allegations that the individual defendant had authority over personnel and payroll decisions, coupled with authority to hire and fire employees, were adequate to impose joint and several liability); *see also Jimenez v. Green Olive Inc.*, No. 23-CV-8805 (AMD) (JAM), 2024 WL 3763467, at *14 (E.D.N.Y. Aug. 13, 2024) (finding defendants were jointly and severally liable where both parties defaulted and the individual defendant oversaw daily operations, had authority to hire and fire employees, controlled terms and conditions of employment, determined hourly rates, and maintained employment records). Thus, given Plaintiff's assertions, both Defendants can be held jointly and severally liable for the overtime wages.

Moreover, the FLSA contains numerous exemptions for certain employees. *See* U.S.C. 29 § 213 (explaining exemptions to coverage by the statute). Some of those exempted from the FLSA include "bona fide 'professional' employees, a group that includes employees

compensated on a salary basis at a rate of not less than $455.00 per week and whose primary duties require advanced knowledge in a field of science or learning." *Ghosh v. Neurological Servs. of Queens*, No. 13-CV-1113 (ILG) (CLP), 2015 WL 431807, at *3 (E.D.N.Y. Feb. 3, 2015). Exemption under the FLSA is an affirmative defense and the *employer* has the burden of proving the employee's exemption. *Hosseini v. Miilkiina LLC*, No. 22-cv-1459 (LJL), 2023 WL 7128092, at *7 n.1 (S.D.N.Y. Oct. 27, 2023). Because Defendants have defaulted, this affirmative defense is deemed waived. *Id.*

Further, none of the exemptions even apply to cooks. *See Garcia v. Pancho Villa's of Huntington Village, Inc.*, No. CV 09-486 (ETB), 2011 WL 1431978, at *3–4 (E.D.N.Y. Apr. 14, 2011) (finding the FLSA regulations did not exempt plaintiff from the FLSA's protections where his position as a cook did not make him an executive employee, a creative professional, or a learned professional); *see also Fermin*, 93 F. Supp. 3d at 32 (noting plaintiff's role as a cook constituted a non-exempt employment under the FLSA).

Accordingly, Plaintiff has sufficiently established an employer-employee relationship under the FLSA.

### 3. Whether Plaintiff Was Compensated for Work Performed in Excess of Forty Hours

If the District Court finds that Plaintiff has made a sufficient showing that the employment is covered under the FLSA, the Court next analyzes the merits of Plaintiff's FLSA overtime claims. Indeed, plaintiff must demonstrate the defendants did not comply with the FLSA requirements. *Singh,* 2022 WL 17820099, at *9. Under the FLSA, "an employee must be compensated at a rate of no less than one and-one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.,* 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)). Plaintiffs must provide

sufficient detail demonstrating that they worked more than forty hours a week and were not compensated for the hours worked in excess of forty hours. *Id.* at 201.

Here, Plaintiff claims she is owed $23,072.14 as a result of Defendants' failure to pay her for 15.86 weeks in overtime wages. (*See* ECF No. 21-8 at p. 2.) Specifically, Plaintiff established that she regularly worked six days a week and "between 84 and 93 hours each week, or approximately 88.5 hours each workweek". (ECF No. 13 at ¶ 12; ECF No. 21-2 at ¶ 23; ECF No. 21-7 at ¶ 9.) As such, she states that she is entitled to over $23,000 in overtime wages as a result of Defendants' failure to adequately pay her for this time.

Accepting Plaintiff's allegations as true, as the Court must do on a motion for default judgment, the Court recommends finding that Plaintiff has established that Defendants failed to pay her $23,072.14 in overtime wages. *See Da Silva v. Bennet St. Dev. Corp.*, No. 05-CV-2989 (ARR) (MDG), 2010 WL 11651766, at *4 (E.D.N.Y. Sept. 24, 2010) (holding that "in the default context, where the defendants have failed to dispute plaintiffs' allegations, plaintiffs have provided a sufficient basis for determination of damages" even though plaintiff's filings were "sparse, at best"), *report and recommendation adopted*, 2010 WL 11651765 (E.D.N.Y. Oct. 21, 2010).

## C. NYLL Claims

Because the undersigned recommends a finding of Defendants liability under the FLSA, the undersigned will explore the merits of Plaintiff's NYLL claims to determine whether an exercise of supplemental jurisdiction over the state claims is appropriate. Here, Plaintiff seeks to hold Defendants liable under the NYLL for unpaid overtime wages, unpaid minimum wages, unpaid spread of hours pay, for Defendants' failure to provide wage statements, and for Defendants' violations of the notice requirements. (*See generally* ECF No. 13.)

"New York's Labor Law is the state analogue to the federal FLSA." *Santillan v. Henao,* 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011). However, the NYLL "does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v. Badyna*, No. 12-cv-4021 (RPM) (CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). Similarly, it is not required for plaintiffs to show that defendants engaged in interstate commerce to recover under the NYLL. *See Ethelbert v. Choice Sec. Co*., 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015).

To recover under the NYLL, a Plaintiff must prove "that he was an employee and that Defendants were employer[s] as defined by the statute and accompanying regulations." *Id.* (citing NYLL § 650 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2). The NYLL defines an employer as any "individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer." NYLL § 651(6). An employee is one who is "employed for hire by an employer in any employment." NYLL § 190(2). Further, the test for the employer-employee relationship is based on the same factors as that under the FLSA. *Miranda v. Astoria Provisions, LLC,* No. 19-CV-02923 (EK) (PK), 2020 WL 6370058, at *5 (E.D.N.Y. July 24, 2020); *see also Setty v. Synergy Fitness*, No, 17-CV-06504, 2018 WL 8415414, at *13 (E.D.N.Y. Dec. 18, 2018).

As a threshold matter, Plaintiff is entitled to coverage under the NYLL. Even if it is determined that Plaintiff failed to meet the statutory requirements of enterprise or individual coverage under the FLSA, she has established the employment relationship under the NYLL in identifying Mohammed's control over the daily operations of Jazeera Restaurant. *See Lopic v. Mookyodong Yoojung Nakjie, Inc.*, No. 16-cv-4179 (KAM) (CLP), 2017 WL 10845064, at *5 (E.D.N.Y. Sept. 30, 2017). And, as stated *supra*, both the corporate Defendant and individual

Defendant can be held liable as Plaintiffs' employers in this instance. *See Calle v. Pizza Palace Café LLC*, No. 20 CV 4178 (LDH) (LB), 2022 WL 609142, at \*5 (E.D.N.Y. Jan. 4, 2022). In fact, the NYLL does not require the Plaintiff to establish whether the relationship (i) entailed interstate commerce or (ii) involved a defendant that made over $500,000 in annual sales.

Therefore, the NYLL applies here. *See Lopic*, 2017 WL 10845064, at \*5 ("If a court in this Circuit has already found liability under the FLSA, it will routinely impose liability for a violation of the NYLL."). If the Court decides that Plaintiff's FLSA claim falls short of a successful claim, and subsequently declines to exercise supplemental jurisdiction over the state claims, the undersigned recommends that the Amended Complaint be dismissed. *See Santacruz*, 2021 WL 4341103, at \*5 (recommending that the default judgment motion be denied and the clerk close the case); *Singh*, 2022 WL 17820099, at \*8 ("Generally, courts have found it appropriate to decline exercise of supplemental jurisdiction over state law claims where all FLSA claims have been dismissed."); *see also Fernandez v. Main Glatt Corp.*, No. 12- CV-986 (SJ) (VVP), 2014 WL 1310287, at \*4 (E.D.N.Y. Mar. 14, 2014) (declining to exercise jurisdiction over state claims and recommending that the motion be denied and the complaint be dismissed with leave to replead in 30 days).

## *Unpaid Overtime Wages*

Here, Plaintiff, through her Amended Complaint, alleges that from February 2023 through June 2023, she worked for Defendants for six days per week for approximately 13 hours a day. (ECF No. 13 at ¶ 12.)  Plaintiff was paid at a weekly salary of $800 for all hours worked and never received additional compensation for the work in excess of the forty hours per week. (*Id.* at ¶ 15.) As with the FLSA overtime claim, this would be sufficient for Plaintiff to receive damages for lack of overtime compensation under the NYLL.  *See Lopez v. Royal Thai Plus,*

*LLC*, No. 16-CV-4028-NGG-SJB, 2018 WL 1770660, at *7–8 (E.D.N.Y. Feb. 6, 2018) (finding plaintiff pled a sufficient overtime claim under NYLL where he demonstrated through his complaint the amount of hours worked in excess of forty hours).

*Unpaid Minimum Wages under NYLL*

Here, Plaintiff contends that Defendants "willfully failed to pay" the applicable minimum wage rates for all hours that Plaintiff worked. (ECF No. 13 at ¶ 39.) Indeed, Plaintiff notes that she was paid a weekly rate of $800.00 per week, regardless of the number of hours that she worked each day or week. (ECF No. 21-7 at ¶ 10.)

New York regulations provide that the "regular rate of pay" for employees working in restaurants is calculated by "dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lessor of 40 hours or the actual number of hours worked by that employee during the work week." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5(a)-(b). Under this calculation, Plaintiff maintained an hourly rate of $20.00 ($800 divided by 40 hours). This hourly rate is higher than the applicable minimum wage rate for employees working in Hicksville (Nassau County) in 2023—the year Plaintiff was employed. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.2(a), 146-2.1(a)(1)(i) (establishing the basic minimum hourly rates for New York employees and illustrating that a minimum hourly rate of $20.00 was far higher than the minimum wage rate in 2023). Accordingly, Plaintiff has no NYLL minimum wage claim.

*Spread of Hours Violation*

Plaintiff avers that Defendants failed to pay her "spread-of-hours pay for each day in which her hours exceeded 10 hours". (ECF No. 13 at ¶ 17.) Indeed, Plaintiff asserts that she routinely worked numerous workdays where her work exceeded ten hours yet she received no additional compensation for such work. (*Id.* at ¶¶ 16-17.) Plaintiff maintains that she is entitled

to compensation of one additional hour of pay at the applicable NYLL minimum wage for each day that she exceeded ten hours. (*Id.* at ¶ 42.) Plaintiff argues that she worked more than ten hours "almost every day" and thus the spread of hours figure reflects six days per week throughout her employment. (ECF No. 21-1 at p. 27 n.4.) Accordingly, Plaintiff asserts that she is entitled to $1,427.14 in spread of hours pay. (ECF No. 21-8.)

Under New York law, the spread of hours provision allows a plaintiff to recover an extra hour's worth of pay at the minimum wage rate for each day than an employee works in excess of ten hours. *Gomez v. El Rancho de Andres Carne de Tres Inc.*, No. CV 2012-1264 (CBA) (MDG), 2014 WL 1310296, at *5 (E.D.N.Y. Mar. 11, 2014) (referencing N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4). The spread of hours is comprised of "the interval between the beginning and end of an employee's workday" and includes "working time plus time off for meals". N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.16.

However, an employee under the NYLL may not collect spread of hours compensation where his or her hourly rate exceeds the applicable minimum wage rate. *See Shu Qin Xu v. Wai Mei Ho*, 111 F. Supp. 3d 274, 281 (E.D.N.Y. 2015) ("Courts in New York have found that the spread of hours pay requirement only applies to those employees making minimum wage and not to those making more than minimum wage."); *see also Hernandez v. Delta Deli Market Inc.*, No. 18-CV-375, 2019 WL 643735, at *7 (E.D.N.Y. Feb. 12, 2019) (finding that "only employees making the minimum wage rate, or less, are eligible for spread-of-pay compensation."). *Compare Cheng v. Wong*, No. 24-CV-1507 (ARR) (LB), 2024 WL 4309235, at *2, *3 (E.D.N.Y. Sept. 25, 2024) (dismissing the spread of hours pay claim where plaintiffs, despite adequately alleging they worked more than ten hours on several workdays, failed to sufficiently allege their hourly rate was minimum wage or less), *with Morales v. Los Cafetales Restaurant Corp.*, No.

33

21-CV-1868 (AMD) (RER), 2023 WL 7684775, at *5 (E.D.N.Y. Oct. 12, 2023), *report and recommendation adopted* 2023 WL 8021460 (E.D.N.Y. Nov. 20, 2023) (awarding plaintiff spread of hours compensation where she not only asserted that some of her shifts lasted longer than ten hours, but also that she was paid below minimum wage).

As determined *supra*, Plaintiff's hourly rate was $20.00. Moreover, the prevailing minimum wage rate for an employee, like Plaintiff, working in Nassau County during 2023 was $15.00. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.2(a)(1)(ii) (noting that employees in Nassau County were entitled to "$15.00 per hour on and after December 31, 2021" until January 1, 2024). Such a circumstance is the death knell to Plaintiff's spread of hours claim. Accordingly, the undersigned recommends that Plaintiff is not entitled to recover any spread of hours compensation.

*Wage Notice and Wage Statement Claims*

Plaintiff brings claims under the NYLL alleging that Defendants failed to furnish accurate wage statements for each of her pay periods as required under as required under NYLL § 195(3), along with failure to provide her with a wage notice upon her hire in her native language as required under NYLL § 195(1). (ECF No. 13 at ¶ 1.)

Under the NYLL's notice and wage statement provisions, employers are statutorily required to provide each employee a notice of their rate of pay and a wage statement listing specific information with each paycheck. N.Y. Lab. L. §§ 195(1)(a), 195(3). The notice must contain "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other." *Id.* § 195(1)(a). Further, the employer must also "obtain from the employee a signed and dated written acknowledgement, in English and in the primary language of the employee, of receipt of this notice." *Id.* The wage statements must include "the

dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions." *Id*. § 195(3). An employer who fails to provide notices and statements is liable for statutory damages. *See id*. § 198(1-b), (1-d).

The Supreme Court rejected "the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (quoting *Spokeo Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Article III standing must be satisfied in order to comply with *TransUnion*. "The requirements of Article III standing are well established: '[A] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (quoting *Spokeo*, 578 U.S. at 338). "At the default judgment stage, as at the motion to dismiss stage, the plaintiff 'bears the burden of alleging facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" *Hennesssy ex rel. Hennessy v. Poetica Coffee Inc.*, No. 21-CV-5063 (KAM) (RML), 2022 WL 4095557, at *2 (E.D.N.Y. Sept. 7, 2022) (quoting *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022)).

Here, Plaintiff failed to plead that she suffered an injury in fact sufficient to satisfy the standing requirement. Regarding the notice claims, Plaintiff merely alleges Defendants failed to "post notices explaining wage and hour requirements in conspicuous places" and "provide Plaintiff upon hire written notice in her native language of her rate of pay and other information required by [the] NYLL." (ECF No. 13 at ¶¶ 19-20.) Similarly, with respect to her wage

statement claim, Plaintiff avers that Defendants "failed to provide Plaintiff with an accurate statement with every payment of wages listing the correct number of regular hours worked and the correct number of overtime hours worked in violation of [the] NYLL." (*Id.* at ¶ 21.) Further, Plaintiff's Amended Complaint does not contain any indication that an injury in fact was suffered and is merely a recitation of the statutory language.  Moreover, Plaintiff's Memorandum of Law not only exclusively cites decisions pre-dating *TransUnion*, but also lacks any additional support for this Court to find that the standing requirement has been satisfied.

Accordingly, it is recommended that Plaintiff's notice and wage statement claims be dismissed. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 305 (2d Cir. 2024) (affirming the district court's dismissal of plaintiff's wage notice and wage statement claims under the NYLL for failure to allege an "actual injury", noting plaintiff "cannot rely on technical violations of the Labor Law but must allege actual injuries suffered as a result of the alleged wage notice and wage statement violations") (internal quotations omitted); *see also Veintimilla v. Sunny Builders NY*, No. 22-CV-1446 (LDH) (TAM), 2023 WL 2969385, at *11 (E.D.N.Y. Feb. 17, 2023) (noting an employee does not have standing to obtain statutory damages "based solely on allegations that an employer failed to provide the wage notices and statements required by the NYLL), *report and recommendation* (default judgment motion withdrawn).

## V.    <u>Damages</u>

Once liability for default is established, the next inquiry is damages. A party's default constitutes a concession of all well pleaded allegations, however, such default "is not considered an admission of damages."  *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 271 (E.D.N.Y. 2019) (quoting *Cement & Concrete Workers Dist. Council Welfare Fund,*

*Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)).

While "the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *See Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quotations omitted), *report and recommendation adopted*, 2012 WL 1354481, at *2 (Apr. 13, 2012); *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)) ("The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty.")  Under Rule 55(b)(2), "it [is] not necessary for the District Court to hold a hearing" to determine the amount of damages, "as long as it ensured that there was a basis for the damages specified in the default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see also Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Gilbert*, No. 20-CV-1441, 2022 WL 344270, at *3 (N.D.N.Y. Feb. 4, 2022) ("A hearing is not necessary where the record contains detailed affidavits and documentary evidence that enables the court to evaluate the proposed sum and determine an award of damages.").

Here, Plaintiff requests the following damages:

- Unpaid overtime wages under the FLSA and NYLL and unpaid spread of hours compensation in the combined amount of $24,499.29,

- Liquidated damages under the NYLL in an amount equal to the statutory damages of $24,499.29,

- Statutory damages pursuant to NYLL § 195(1) in the amount of $5,000.00

- Statutory damages pursuant to NYLL § 195(3) in the amount of $5,000.00,

- Pre-judgment interest under the NYLL, and

- Post-judgment interest.

(ECF No. 21-2 at pp 1-2.)

### a. Unpaid FLSA and NYLL Compensation

"When a defendant fails to appear and produce employment records, the Court may credit a plaintiff's assertions regarding the hours they worked and the compensation they received, even when based only on plaintiff's recollection." *Singh*, 2022 WL 17820099, at *10. Notably, a plaintiff may not recover twice under the FLSA and NYLL. *Hosseini*, 2023 WL 7128092, at *6 ("Although Defendants violated the overtime requirements of both the FLSA and NYLL, Plaintiff may not recover twice by collecting awards under both statutes.").

Here, Plaintiff seeks a total actual damages award under the FLSA and NYLL of $24,499.29—comprising of an unpaid overtime request of $23,072,14 plus an unpaid spread of hours award of $1,427.14. (*See* ECF 21-2 at ¶ 2.) The Court considers each request in turn.

Under the FLSA and NYLL, an employee working in excess of forty hours per week is entitled to overtime pay at a rate of one and one-half times the employee's regular rate. *Dominguez v. 4 Giron Constr. Inc.*, No. 22-CV-04730-DLI-SJB, 2024 WL 4250289, at *4 (E.D.N.Y. Aug. 15, 2024) (referencing 29 U.S.C. § 207(a)(1) and N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2). Here, Plaintiff's regular rate was $20.00 (*see* ECF No. 21-8), which means that her overtime rate is $30.00 per hour. Additionally, she was employed with Defendants from February 15, 2023 to June 6, 2023, thus constituting 15.86 weeks where Defendants failed to furnish her overtime wages. (ECF No. 13 at ¶ 11; ECF No. 21-8.) Plaintiff further alleges that she worked between eighty-four and ninety-three hours per week (averaging 88.5 hours per

week), with roughly 48.5 of those constituting overtime. (ECF No. 13 at ¶ 12.) Thus, she claims that she is owed $23,072.14 in overtime wages—the rough sum of 15.86 weeks (x) $30.00 per hour (x) 48.5 hours. This appears to be a reasonable amount and Plaintiff's method of calculation should be adopted. Accordingly, the undersigned finds that Plaintiff is entitled to receive overtime wages in the amount of $23,072.14.

Having found that Plaintiff sufficiently alleged both a FLSA and NYLL claim, she may only recover the aforementioned overtime compensation award once. *See Hosseini*, 2023 WL 7092092, at *6; *see also Maldonado v. La Nueva Rampa, Inc.*, No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at *5 (E.D.N.Y. May 14, 2012) (explaining that a plaintiff may not simultaneously recover under both statutes for the same injury). Similarly, in the event that Plaintiff is found to have established liability under either the FLSA or NYLL, but not both, she is prohibited from seeking dual recovery if given leave to re-plead the deficient statutory claim. *See Hosseini*, 2023 WL 7092092, at *6.

Additionally, Plaintiff seeks a spread of hours award of $1,427.14. (*See* ECF No. 21-8.) Under the NYLL, a spread of hours compensation award is comprised of "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required . . . for any day in which: (a) the spread of hours exceeds 10 hours . . . ." N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.4. As noted *supra*, the undersigned recommended a finding that Plaintiff has not established the requisite liability to recover for a spread of hours violation. However, if the Court were to find that Plaintiff has demonstrates spread of hours liability, Plaintiff would be entitled to her requested amount as she has accurately calculated the spread of hours number— $15.00 minimum wage for one hour (x) 6 days a week (x) 15.86 weeks = $1,427 (*see* ECF No. 21-8)—thereby increasing the total actual damages award to $24,499.29 as well.

### b. Liquidated Damages under the NYLL

Under the NYLL, "[e]mployees may recover liquidated damages of 100% of wages owed unless 'the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law.'" *Fermin*, 93 F. Supp. 3d at 47 (internal citation omitted); *see also* N.Y. Lab. L. § 198(1–a).  Because the FLSA and NYLL liquidated damages deter the same conduct, the Second Circuit has interpreted the FLSA and NYLL "as not allowing duplicative liquidated damages for the same course of conduct."  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  "In light of the principle that 'the law providing the greatest recovery will govern,' [p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA."  *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722 (PK), 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7, 2020) (quoting *Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-5637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015)).

Plaintiff asserts she is entitled to $24,499.29 for liquidated damages under the NYLL. (ECF No. 21-2 at ¶ 2; ECF No. 21-11 at ¶ 4.) At the outset, the NYLL, as opposed to the FLSA, is the appropriate statutory lens by which a liquidated damages claim should be analyzed. *See Callender v. Panabori Food Corp.*, No. 16 CV 7152 (PKC) (DF), 2018 WL 4565876, at *13 (S.D.N.Y. July 11, 2018) (noting plaintiff "appropriately [sought] liquidated damages under state law" as the NYLL provides plaintiff with a recovery larger than the federal counterpart); *see also Calle*, 2022 WL 609142, at *11 ("As the NYLL allows for the greatest recovery, the Court considers plaintiff's claim for liquidated damages under New York law.")

Here, Plaintiff is entitled to recover liquidated damages because Defendants did not comply with the NYLL and failed to demonstrate good faith.  Indeed, Defendants' lack of good faith is evidenced through the failure to defend this action, even despite receiving ample notice

throughout the course of this litigation. *See Lu Nan Fan v. Jenny & Richard's Inc.*, No. 17-CV-6963 (WFK), 2019 WL 1549033, at *11 (E.D.N.Y. Feb. 22, 2019) ("As a result of defendants' default in this action, the record is devoid of evidence of their good faith or reasonable belief."), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019); *Peralta v. M & O Iron Works, Inc.*, No. 12-CV-3179 (ARR) (RLM), 2014 WL 988835, at *10 (E.D.N.Y. Mar. 12, 2014) ("Obviously, as a result of defendants' default in this action, the record is devoid of evidence of defendants' good faith or reasonable belief."). Also, as detailed *supra*, Plaintiff alleged that Defendants failed to provide Plaintiff with her appropriate overtime wages.

Therefore, Plaintiff would be entitled to an amount of liquidated damages equal to the overtime wage damages amount—$23,072.14. Like the actual damages calculation, the $23,072.14 liquidated damages award is conditioned upon a finding that Plaintiff is not entitled to spread of hours compensation ($1,427.14) under the NYLL. In the event liability is shown for spread of hours violation, Plaintiff would thus be entitled to a total liquidated damages award of $24,499.29 ($23,072.14 (+) $1,427.14).

### c. Defendants' Statutory Violations

Plaintiff seeks $10,000 for statutory damages concerning Defendants' violations pursuant to NYLL §§ 195(1), (3). Violations of NYLL § 195(1) carry damages of $50 per workday, for a maximum of amount of $5,000." *Rowe v. CC Restaurant & Bakery, Inc.*, No. 17-CV-01423 (CBA) (PK), at *8 (E.D.N.Y. Aug. 15, 2019) (citing NYLL § 198(1-b)). Similarly, "[v]iolations of NYLL § 195(3) carry damages of $250 per workday, for a maximum amount of $5,000." *Id.*

Here, Plaintiff worked six days a week for 15.86 weeks. (ECF No. 13 at ¶ 12; ECF No. 21-8.) She alleges that she never received a wage notice or wage statements throughout the course of her employment with Defendants. (*See* ECF No. 13 at ¶ 1.) She further contends that

41

because she worked for Defendants for more than 100 days, she is entitled to the maximum statutory award under both statutes. (*See* ECF No. 21-1 at p. 28.)

As recommended *supra*, Plaintiff has not established the requisite liability to recovery here for lack of standing under *TransUnion*. However, if the Court were to find that Plaintiff has established liability, Plaintiff would be entitled to the statutory maximum of $5,000 under §§ 195(1), (3), for a total of $10,000. *See Ming Hui v. Shorty's Seafood Corp.*, No. 15-CV-7295 (RJD) (ST), 2017 WL 5054401, at *10 (E.D.N.Y. Sept. 6, 2017) (finding defendants never provided plaintiff with any written notice or wage statements and thereby awarding plaintiff an award under §§ 195 (1), (3)), *report and recommendation adopted*, 2017 WL 5125527 (E.D.N.Y. Nov. 2, 2017).

### d. Pre-Judgment Interest

It is well settled that pre-judgment interest is not awardable under the FLSA in addition to liquidated damages. *Fermin*, 93 F. Supp. 3d at 48 ("As FLSA liquidated damages are meant to be compensatory and not punitive, there is no need to employ pre-judgment interest to restore Plaintiffs to a position they would have otherwise enjoyed absent the wage-protection violation."). Contrarily, the NYLL permits an award of pre-judgment interest and liquidated damages. *See id.* (collecting cases explaining that the dual availability exists because New York views liquidated damages as a punitive, thus pre-judgment interest is not viewed as a duplicative damages award). Indeed, pre-judgment interest is available where, like here, "liability is found not only under the NYLL but also under the FLSA." *Begum v. Ariba Discount, Inc.*, No. 12cv6620 (DLC), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015) (citing *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 150 n.7 (2d Cir. 2011)). Notably, pre-judgment interest is computed based on actual, not liquidated damages. *De Los Santos v. Marte Constr., Inc.*, No. 18-CV-10748 (PAE)

42

(KHP), 2020 WL 8549054, at *7 (S.D.N.Y. Nov. 25, 2020), *report and recommendation adopted*, 2020 WL 8549055 (S.D.N.Y. Dec. 17, 2020).

Under the NYLL, an award of pre-judgment interest "shall be at the rate of nine per centum per annum." N.Y. C.P.L.R. § 5004. Additionally, where damages were incurred at various times, pre-judgment interest "shall be computed upon each item from the date it was incurred or upon all the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b); *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 386 (E.D.N.Y. June 12, 2013) (finding where "unpaid wages were incurred at various times, . . . [s]imple prejudgment interest is calculated from a singular, midpoint date . . . through the date judgment is entered) (alterations in original) (internal quotations and citation omitted). "Courts applying N.Y. C.P.L.R. § 5001 have 'wide discretion in determining a reasonable date from which to award pre-judgment interest'". *Fermin*, 93 F. Supp. 3d at 49 (quoting *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)).

Here, Plaintiff asserts that pre-judgment should be awarded under the NYLL. (ECF No. 21 at p. 1.) Notably, Defendants failed to pay Plaintiff overtime wages throughout the course of her employment which began on February 15, 2023 and ended on June 6, 2023. (ECF No. 13 at ¶ 11.) As such, the precise midpoint date during this period of employment is April 11, 2023, the date that Plaintiff also asserts to be the "midpoint date" for a pre-judgment interest analysis. (*See* ECF No. 21-8.) Accordingly, the undersigned finds this date to be a reasonable beginning date for the pre-judgment interest calculation. *See De Los Santos*, 2020 WL 8549054, at *7 (S.D.N.Y. Nov. 25, 2020) ("The intermediate date used is typically the midpoint of the plaintiff's employment.").

As recommended *supra*, Plaintiff should be awarded an actual damages award of $23,072.14, plus prejudgment interest calculated at 9% from April 11, 2023 to date Judgment is

entered. In the event that the Court concludes that a spread of hours claim under the NYLL *has been* satisfied, and an actual damages award under the NYLL is $24,499.29, then the pre-judgment interest should be calculated on that amount.

### e. Post-Judgment Interest

Finally, Plaintiff seeks post-judgment interest for his claims. (ECF No. 13 at p. 9.) 28 U.S.C. § 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." *Duffy v. Oyster Bay Indus., Inc.*, No. 10-CV-3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), *report and recommendation adopted*, 2011 WL 2259749 (E.D.N.Y. June 2, 2011); *see also Thompson v. Hyun Suk Park*, No. 18-CV-00006 (AMD) (ST), 2020 WL 5822455, at *11 (E.D.N.Y. Sept. 1, 2020), *report and recommendation adopted*, 2020 WL 5820547 (E.D.N.Y. Sept. 30, 2020) (awarding post-judgment interest in FLSA and NYLL case). Here, having found that Plaintiff established liability under his FLSA and NYLL claim, and would be entitled to overtime and liquidated damages, Plaintiff is thus entitled to post-judgment interest from the date the Clerk of Court enters judgment until the date of payment.

## VI.    Attorneys' Fees and Costs

### a. Costs

Plaintiff's counsel requests a reimbursement for costs of $678.83. (ECF No. 21-2 at p. 2.) A party can typically recover "[c]osts relating to filing fees, process servers, postage, and photocopying[.]" *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 219–20 (E.D.N.Y. 2019)

(internal quotation marks omitted).  A request for costs must be supported by adequate documentation.  *Id*. (collecting cases requiring appropriate documentation or receipts for costs).  Furthermore, the party moving for costs bears the burden of demonstrating the reasonableness of each charge; failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery."  *Id*. (internal quotation marks omitted).  However, certain costs, such as filings fees, "are recoverable without supporting documentation if verified by the docket." *Id*.  Notably, "the decision of whether to award costs . . . 'is committed to the sound discretion of the district court.'" *Swiatkowski v. Citibank as Citigroup*, 745 F. Supp. 2d 150, 174 (E.D.N.Y. 2010) (quoting *Cosgrove v. Sears, Roebuck, Co*., 191 F.3d 98, 102 (2d Cir. 1999)).

Here, the Court has reviewed the documentation submitted by Plaintiff's counsel with respect to costs sought. These records indicate $678.83 in litigation expenses, specifically $402.00 for a filing fee and $276.83 for service of process fees. (*See* ECF No. 21-10 at pp. 2-4); (ECF No. 1) (submission of $402 filing fee). All such costs are ordinarily recoverable in this Circuit. *See Zurita v. High Definition Fitness Center, Inc.*, No. 13 CV 4394 (CBA) (RML), 2016 WL 3619527, at *11 (E.D.N.Y. June 9, 2016) ("[S]ervice of process fees are routinely recoverable."); *see also Finkel v. Firequench, Inc.*, No. 23-CV-4868, 2024 WL 320870, at *8 (E.D.N.Y. Jan. 29, 2024) (concluding plaintiff was entitled to an award of costs "for the $402 filing fee, which is recoverable because the docket indicates the filing fee was paid."). For these reasons, it is respectfully recommended that Plaintiff's request for $678.83 in costs be granted.

### b.  Attorney's Fees

Finally, Plaintiff's counsel requests attorney's fees of $12,892.50. (ECF No. 21-2 at p. 2.) "A prevailing plaintiff, under both federal and state statutes, is entitled to reasonable attorney's fees and costs."  *Montalvo v. Paul Bar & Rest. Corp.,* No. 22-CV-01423 (JLR) (SN), 2023 WL

6519717, at *9 (S.D.N.Y. Aug. 11, 2023) (citing 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(4)), *report and recommendation adopted as modified*, 2023 WL 5928361 (E.D.N.Y. Sept. 13, 2023). Here, Plaintiff is a "prevailing party" entitled to an award of fees and costs. In this Circuit, when considering an application for attorney's fees, courts are obligated to determine the presumptively reasonable fee. *See Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 790 F. App'x 289, 292 (2d Cir. 2019). This presumptively reasonable fee, that is, the lodestar, amounts to "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). Such an amount is "the product of a reasonable hourly rate and the reasonable number of hours required by the case" and "creates a presumptively reasonable fee". *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

Although the Court has broad and "considerable discretion" over a fee award, the Court must consider a variety of factors. *Arbor Hill Concerned Citizens Neighbborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). These factors include, the labor and skill required, the difficulty or complexity of the issues, the attorney's customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases. *See id.* at 184, 186 n.3, 190. Once a determination is made on the reasonableness of the hourly rate, then that rate is applied to the number of hours reasonably expended by counsel in determining the award. *See id.* at 190.

"A party seeking an award of attorney's fees bears the burden to document 'the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflected, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done.'" *Bds. Trs. Ins., Annuity, Scholarship, & Apprenticeship Training Funds Sheetmetal Workers' Int'l Ass'n, Loc. Union No. 137 v. Liberty Signs, Inc.*, No. 10-cv-1737

(ADS) (AKT), 2011 WL 4374519, at *6 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 4373893 (E.D.N.Y. Sept. 19, 2011).  "[A] party moving for attorneys' fees must [also] provide the credentials law school matriculation, practice area, and years of experience in the relevant practice area to substantiate the requested hourly rate for each individual."  *Desly Int'l Corp. v. Spartak*, No. 13-CV-2303 (ENV) (LB), 2018 WL 4522081, at *8 n.11 (E.D.N.Y. Aug. 1, 2018).

In the present action, four attorneys—Peter Romero, David Barnhorn, Matthew Farnworth, and Sara Messina—and one paralegal—Angelica Villalba—submitted bills. (*See* ECF No. 21-9 at pp. 2-5.) Plaintiff, importantly, listed the experiences and background for each of the four attorneys. Specifically, Peter Romero has litigated employment actions in federal and New York state court since July of 2004, has acted as class counsel on multiple employment class actions, and currently serves as founder of the Romero Law Group LLC. (ECF No. 21-2 at pp. 6-7.) Furthermore, David Barnhorn, a senior associate at the Romero Law Group since April 2018, has focused his career entirely on employment law litigation, including numerous wage and hour lawsuits, has been selected as a "Rising Star by *Super Lawyers*" for Employment and Labor law from 2016 through 2023, and has also been appointed class counsel in numerous wage and hour disputes. (*Id.* at pp. 7-8.) Additionally, Matthew Farnworth has been an associate at the Romero Law Group since August 2021 and, prior to joining the Romero Law Group, was a senior associate at two prominent employment law litigation firms. (*Id.* at pp. 8-9.) Moreover, Sara Messina, an associate at the Romero Law Group, has maintained a career centering around employment law litigation, handling both state and federal court actions pertaining to wage and hour disputes among individual and class members. (*Id.* at p. 10.)

Furthermore, Peter Romero charges $400 per hour, David Barnhorn charges $325 per hour, Matthew Farnworth charges $300 per hour, Sara Messina charges $250 per hour, and Angelica Villalba charges $100 per hour. (*See* ECF No. 21-9 at pp. 2-5.) Such rates are reasonable and within the range of similarly experienced attorneys who practice wage and hour cases in this District. *See, e.g., Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 WL 136643, at *2 (E.D.N.Y. Jan. 11, 2020) (finding "rates of $350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time . . . are reasonable and consistent with rates allowed in this district."); *Alvarez v. Sterling Portfolio Investment, LP*, No. 16 Civ. 5337 (CBA) (VMS), 2017 WL 8790990, at *8 (E.D.N.Y. Dec. 13, 2017) ("Recent decisions in this District have determined that $300-$400 per hour is the reasonable range within which partners or experienced attorneys may place their rates in typical FLSA cases."); *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707 (ENV) (MMH), 2024 WL 4271234, at *17 (E.D.N.Y. Sept. 19, 2024) ("[A]n hourly rate of $325 . . . is reasonable and within the range of awards for work by senior associates."); *Li v. Hly Chinese Cuisine Inc.*, 596 F. Supp. 3d 439, 452 (E.D.N.Y. 2022) (concluding $300 for an associate with "extensive experience litigating wage and hour claims" is reasonable); *Widjaja v. Kang Yue USA Corp.*, No. 09 Civ. 2089 (AMD) (CLP), 2016 WL 1056565, at *3 (E.D.N.Y. Mar. 16, 2016) (a junior associate's hourly rate of $250 "fall[s] well within the prevailing hourly rates for wage-and-hour cases in this District."); *see Hernandez*, 2019 WL 643735, at *10 (E.D.N.Y. Feb. 12, 2019) (finding $100 per hour for a paralegal to be reasonable within the Eastern District).

After determining the appropriate hourly billing rate, the court must then calculate the hours reasonably expended. *Maldonado*, 2012 WL 1669341, at *13. Ultimately, courts have considerable discretion in determining reasonable attorneys' fees in FLSA cases. *See Barfield v.*

*N.Y. City Health & Hospital Corp.*, 537 F.3d 132, 151 (2d Cir. 2008) (noting, in the FLSA context, "[w]e afford a district court considerable discretion in determining what constitutes reasonable attorneys' fees in a given case . . . ."). In doing so, courts in this Circuit will analyze the contemporaneous time records submitted to decipher whether a reasonable attorney would have "engaged in similar time expenditures" at the time the work was performed. *Edwards v. Barclays Servs. Corp.*, No. 19 Civ. 9326 (GBD) (GWG), 2020 WL 603955, at *2 (S.D.N.Y. Oct. 13, 2020) (citing *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).

"If any expenditure of time was unreasonable, the court should exclude these hours from the calculation." *Santillan*, 822 F. Supp. 2d at 299. Additionally, "the court 'should exclude excessive, redundant or otherwise unnecessary hours.'" *Brown v. Green 317 Madison, LLC*, No. 11 CV 4466 (ENV), 2014 WL 1237448, at *10 (E.D.N.Y. Feb. 4, 2014) (quoting *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009)). In these circumstances, "[w]here entries on a time sheet are vague, duplicative, or otherwise insufficient, a court need not itemize individual entries as excessive; rather, it may make an across-the-board reduction, or percentage cut, in the amount of hours." *John v. Demaio*, No. 15 CV 6094 (NGG) (CLP), 2016 WL 7469862, at *8 (E.D.N.Y. Sept. 29, 2016) (quotations omitted).

Here, Plaintiff's Counsel expended 43.6 hours representing Plaintiff in this action (*See* ECF No. 21-9 at pp. 2-5.) Such work is detailed throughout billing records submitted and references work done over the course of one year, specifically preparing and filing the Complaint and Amended Complaint, communicating with Plaintiff, and drafting, revising, and compiling all documents necessary for the current motion for default judgment. (*See id.*) As such, as Plaintiff's Counsel contends, the work they did is not duplicative or excessive and was handled "as efficiently as possible." (ECF No. 21-1 at pp. 33-34.)

Upon review of the contemporaneous billing records submitted, the hours that Plaintiff's Counsel expended do not appear high for the case at hand. Indeed, a total of 43.6 hours fits squarely within the reasonable range for cases with a similar procedural posture—a motion for default judgment in an FLSA/NYLL action. *See, e.g., Zhang v. Asian Moon Restaurant Corp.*, No. CV 20-2776 (DG) (AYS), 2022 WL 1422576, at *9 (E.D.N.Y. Mar. 15, 2022) (finding 44.8 hours to be within the reasonable range for a single-plaintiff default judgment case spanning over one year and pertaining to FLSA and NYLL violations), *report and recommendation adopted*, 2022 WL 1460275 (E.D.N.Y. May 9, 2022); *Maldonado*, 2012 WL 1669341, at *14 (concluding wage and hour cases involving a default judgment following the filing of a complaint should be 55 hours or less); *Said v. SBS Electronics, Inc.*, No. CV 08-3067 (RJD) (JO), 2010 WL 1265186, at *11 (E.D.N.Y. Feb. 24, 2010) (reducing attorneys' hours to 41.35, a "far more reasonable" amount for a FLSA and NYLL default judgment case spanning one year), *report and recommendation adopted*, 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2010). Furthermore, none of the entries submitted appear to be vague, duplicative, excessive, or redundant.

Accordingly, the undersigned recommends granting Plaintiff's counsel's request for attorney's fees of $12,892.50.

## **CONCLUSION**

For the reasons stated herein, the undersigned respectfully recommends that Plaintiff's motion for default judgment (ECF No. 21) be **GRANTED** and the court enter judgment against Defendants Jazeera and Mohammed in the total amount of **$59,715.61** (consisting of $23,072.14 in unpaid overtime wages; $23,072.14 in liquidated damages under the NYLL; $678.83 in litigation costs; and $12,892.50 in attorneys' fees), plus prejudgment interest at 9% per annum

on the unpaid overtime wages of $23,072.14 from April 11, 2023 to date of entry of Judgment, with liability being joint and several as between Defendant Jazeera and Defendant Mohammed.

## **OBJECTIONS**

A copy of this Report and Recommendation is being electronically served on counsel. Counsel for Plaintiff is directed to serve copies of this Report and Recommendation upon the defaulting Defendants on or before December 10, 2024, and file proof of service of same on ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals.  *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:      Central Islip, New York
              December 6, 2024

                                   **Respectfully Recommended:**

                                   /S/ *James M. Wicks*
                                   JAMES M. WICKS
                                   United States Magistrate Judge